The GENTRY GALLERY, INC.,
Plaintiff–Appellant,

v.

The BERKLINE CORPORATION,
Defendant/Cross–Appellant.

Nos. 97–1076, 97–1104 and 97–1182.

United States Court of Appeals,
Federal Circuit.

Jan. 27, 1998.

Rehearing Denied; Suggestion For Rehearing In Banc Declined
April 3, 1998.

James J. Foster, Wolf, Greenfield & Sacks, P.C., Boston, MA, argued for plaintiff-appel-

lant. With him on the brief was Douglas R. Wolf.

Ronald L. Engel, Rudnick & Wolfe, Chicago, IL, argued for defendant-cross appellant. With him on the brief was Richard A. Machonkin. Of counsel on the brief was David D. Kaufman, Hamman & Benn, Chicago, IL.

Before RICH, Circuit Judge,
FRIEDMAN, Senior Circuit Judge, and
LOURIE, Circuit Judge.

LOURIE, Circuit Judge.

The Gentry Gallery appeals from the judgment of the United States District Court for the District of Massachusetts holding that the Berkline Corporation does not infringe U.S. Patent 5,064,244, and declining to award attorney fees for Gentry's defense to Berkline's assertion that the patent was unenforceable. *See Gentry Gallery, Inc. v. Berkline Corp.*, 30 USPQ2d 1132, 1994 WL 171795 (D.Mass.1994) (*Gentry I*). Berkline cross-appeals from the decision that the patent was not shown to be invalid. *See Gentry Gallery, Inc. v. Berkline Corp.*, 939 F.Supp. 98, 41 USPQ2d 1345 (D.Mass.1996) (*Gentry II*). Because the court correctly concluded that the claims were not infringed by Berkline, and that the subject matter of the asserted claims was not shown to have been obvious, and did not abuse its discretion in declining to award attorney fees, we affirm these decisions. However, because the court clearly erred in finding that the written description portion of the specification supported certain of the broader claims asserted by Gentry, we reverse the decision that those claims are not invalid under 35 U.S.C. § 112, ¶ 1 (1994).

## BACKGROUND

Gentry owns the '244 patent, which is directed to a unit of a sectional sofa in which two independent reclining seats ("recliners") face in the same direction. Sectional sofas are typically organized in an L-shape with "arms" at the exposed ends of the linear sections. According to the patent specification, because recliners usually have had adjustment controls on their arms, sectional sofas were able to contain two recliners only

if they were located at the exposed ends of the linear sections. Due to the typical L-shaped configuration of sectional sofas, the recliners therefore faced in different directions. *See* '244 patent; col. 1, ll. 15–19. Such an arrangement was "not usually comfortable when the occupants are watching television because one or both occupants must turn their heads to watch the same [television] set. Furthermore, the separation of the two reclining seats at opposite ends of a sectional sofa is not comfortable or conducive to intimate conversation." *Id.* at col. 1, ll. 19–25.

The invention of the patent solved this supposed dilemma by, *inter alia*, placing a "console" between two recliners which face in the same direction. This console "accommodates the controls for both reclining seats," thus eliminating the need to position each recliner at an exposed end of a linear section. *Id.* at col. 1, ll. 36–37. Accordingly, both recliners can then be located on the same linear section allowing two people to recline while watching television and facing in the same direction. Claim 1, which is the broadest claim of the patent, reads in relevant part:

A sectional sofa comprising:

a pair of reclining seats disposed in parallel relationship with one another in a double reclining seat sectional sofa section being without an arm at one end . . .,

each of said reclining seats having a backrest and seat cushions and movable between upright and reclined positions . . .,

a *fixed console* disposed in the double reclining seat sofa section between the pair of reclining seats and with the console and reclining seats together comprising a unitary structure,

said console including an armrest portion for each of the reclining seats; said arm rests remaining fixed when the reclining seats move from one to another of their positions,

and *a pair of control means*, one for each reclining seat; *mounted on the double reclining seat sofa section* . . . .

*Id.* at col. 4, line 68 to col. 5, ll. 1–27 (emphasis added to most relevant claim language). Claims 9, 10, 12–15, and 19–21 are directed to a sectional sofa in which the control means are specifically located on the console.

In 1991, Gentry filed suit in the District Court for the District of Massachusetts alleging that Berkline infringed the patent by manufacturing and selling sectional sofas having two recliners facing in the same direction. In the allegedly infringing sofas, the recliners were separated by a seat which has a back cushion that may be pivoted down onto the seat, so that the seat back may serve as a tabletop between the recliners. In response to Gentry's complaint, Berkline moved and was granted a transfer to the District of Massachusetts of its earlier-filed action in the United States District Court for the Middle District of North Carolina seeking a declaration that the patent was invalid and not infringed. After that declaratory judgment action was consolidated with Gentry's infringement suit, Berkline added a counterclaim asserting that the patent was unenforceable because of inequitable conduct. The district court granted Berkline's motion for summary judgment of non-infringement, but denied its motions for summary judgment of invalidity and unenforceability. In construing the language "fixed console," the court relied on, *inter alia*, a statement made by the inventor named in the patent, James Sproule, in a Petition to Make Special (PTMS). *See* 37 C.F.R. § 1.102 (1997). Sproule had attempted to distinguish his invention from a prior art reference by arguing that that reference, U.S. Patent 3,877,747 to Brennan *et al.* ("Brennan"), "shows a complete center seat with a tray in its back." *Gentry I*, 30 USPQ2d at 1137. Based on Sproule's argument, the court concluded that, as a matter of law, Berkline's sofas "contain[ ] a drop-down tray identical to the one employed by the Brennan product" and therefore did not have a "fixed console" and did not literally infringe the patent. *Id.* The court held that Gentry was also "precluded from recovery" under the doctrine of equivalents. *Id.* at 1138.

Gentry then requested that final judgment be entered so that it could immediately appeal the non-infringement decision. Berkline

requested that its invalidity and unenforceability counterclaims proceed to trial on the authority of *Cardinal Chemical Co. v. Morton International, Inc.*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1, 26 USPQ2d 1721 (1993). The court agreed with Berkline, stating "that further proceedings will be necessary on the issues of invalidity and inequitable conduct." After a bench trial, the court held that the patent was not invalid under 35 U.S.C. §§ 102 or 103 (1994), and that the claims in which the location of the controls is not limited to the console (claims 1–8, 11, and 16–18) are not invalid under 35 U.S.C. § 112, ¶ 1 (1994). *See Gentry II*, 939 F.Supp. at 101–06, 41 USPQ2d at 1348–52. The court also held that Berkline had failed to prove that the patent was obtained by inequitable conduct and in so ruling noted that "[t]he evidence at trial was not even close." *Id.* at 101, 41 USPQ2d at 1347. The court denied Gentry's motion for the attorney fees it had incurred in overcoming Berkline's allegation of inequitable conduct. The court expressed "sympathy for Gentry, especially in view of Berkline's insistence on pressing the case after prevailing on the infringement issue," but nonetheless concluded that "these circumstances do not permit consideration of an award of fees."

Gentry appeals from the decision of non-infringement and the court's refusal to award attorney fees. Berkline cross-appeals from the decision that the claims are not invalid under §§ 103 or 112. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. *Infringement*

Gentry argues that the district court erred in construing the claim terms "fixed" and "console" in granting summary judgment of non-infringement. Gentry asserts that the term "fixed" merely requires that the sofa section be rigidly secured to the adjoining recliners and that the term "console" refers to any sofa section that separates two recliners and can function as a tabletop. Accordingly, Gentry argues that on the undisputed facts it, not Berkline, is entitled to summary judgment on the issue of infringement. Berkline argues that summary judgment was

properly granted because the term "fixed" requires that no part of the console be movable, while Berkline's sofa has a center seat back that can pivot. Berkline also argues that Gentry effectively defined a center seat with a retractable seat back as *not* a "console" when it distinguished the Brennan reference in the PTMS. On the basis of Berkline's second argument, we agree that it is entitled to judgment as a matter of law that it does not infringe the '244 patent.

We review a district court's grant of summary judgment *de novo*. *See Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576–77, 12 USPQ2d 1382, 1383 (Fed.Cir. 1989). A determination of infringement requires a two-step analysis. "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir. 1993).

Because there is no dispute concerning the structure of the accused device, our infringement analysis involves only claim construction, a question of law which we review *de novo*. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–81, 34 USPQ2d 1321, 1329–31 (Fed.Cir.1995) (in banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577, 38 USPQ2d 1461 (1996). The proper construction of claims is based upon the claim language, the written description portion of the specification, the prosecution history, and if necessary to aid the court's understanding of the patent, extrinsic evidence. *See id.* Our present analysis of infringement under the doctrine of equivalents involves prosecution history estoppel, also a question of law which we review *de novo*. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1579, 34 USPQ2d 1673, 1679 (Fed.Cir. 1995).

We agree with Gentry that the term "fixed" requires only that the console be rigidly secured to its two adjacent recliners. The term "fixed" and the explanatory clause "with the console and reclining seats together comprising a unitary structure" were added during prosecution to overcome a rejection based on a sectional sofa in which the seats were not rigidly attached. Thus, because the term "console" clearly refers to the complete section between the recliners, the term "fixed" merely requires that the console be rigidly attached to the recliners. Moreover, Berkline's interpretation of the term "fixed" unnecessarily excludes from the claim Sproule's preferred embodiment, in which the console can be opened by pivoting its lid. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583, 39 USPQ2d 1573, 1578 (Fed. Cir.1996) (noting that a claim interpretation that excludes the preferred embodiment "is rarely, if ever, correct"). Accordingly, as there is no dispute that Berkline's center seat and recliners form a unitary structure, we conclude that the "fixed" limitation is met by Berkline's sofas.

■ However, Berkline's sofas do not have a "console." The prosecution history indicates that the term "console" is not met by a sofa section having a seat back that folds down to serve as a table top, as in Brennan's seat or Berkline's sofas. As noted by the district court, Sproule's PTMS distinguished the Brennan reference in the following passage: *

> Even if one were to apply the disclosure of reclining vehicle seats such as Brennan ... to furniture, one would not produce the pair of reclining seats joined by a center console as taught by [Applicant]. The tray units of Brennan ... while disposed between tandem reclining vehicle seats, are freestanding retractable structures that are not, per se, consoles nor do they join the pair of reclining seats as taught by Applicant. *Rather Brennan shows a complete center seat with a tray unit in its back.*

* Gentry asserts that Sproule distinguished the Brennan reference on several other grounds. Such an observation is not relevant to our analysis of the prosecution history, for even if Brennan

*Gentry I*, 30 USPQ2d at 1137 (emphasis added). This statement unambiguously indicates that the tray units in Brennan are not "consoles" as that term is used in the patent, regardless of the term's ordinary meaning or the way in which Gentry now urges us to interpret it. The relevant feature of Berkline's sofas, *viz.*, a center seat back that may be folded down to provide a table top between the adjacent recliners, is indistinguishable from the comparable feature in Brennan, a fold-down tray table. In the PTMS, that feature was distinguished from the claimed "console." Thus, we conclude that Berkline's sofas do not contain the claimed "console." *See Ekchian v. Home Depot, Inc.*, 104 F.3d 1299, 1304, 41 USPQ2d 1364, 1368 (Fed.Cir.1997) ("[S]ince, by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover, he is by implication surrendering such protection."). The claims are therefore not literally infringed. Similarly, the argument advanced in the PTMS precludes recovery under the doctrine of equivalents because of prosecution history estoppel. Arguments made by an applicant in a PTMS can create an estoppel, and thus preclude a finding of infringement under the doctrine of equivalents. *See id.* at 1303–04, 41 USPQ2d at 1368 (Fed.Cir.1997) (regarding arguments made by an applicant in an Information Disclosure Statement). Accordingly, we affirm the judgment that Berkline does not infringe the patent.

**B.** *Invalidity*

■ In its cross-appeal, Berkline first argues that all of the claims of the patent are invalid under § 103 as having been obvious, based on the combination of U.S. Patent 4,668,009 ("Talley"), which discloses an armless recliner with a push-button control on its side, and an industry-standard sectional sofa ensemble developed by Kanowsky. Berkline asserts that "[a]nyone who set out to provide a side-by-side recliner configuration as in the '244 patent would recognize that all that was required was to replace the inside armless

was distinguished on multiple grounds, any of those grounds may indicate the proper construction of particular claim terms and provide independent bases for prosecution history estoppel.

chair with an armless recliner." Berkline also argues that the district court clearly erred in finding that "the Talley recliner would be completely inappropriate for use in the sectional arrangement," *Gentry II*, 939 F.Supp. at 104, and that the invention enjoyed considerable commercial success. Gentry responds that the court properly relied on the testimony of Gentry's witnesses, including industrial sofa designer Billy Metts, while discounting Berkline's hindsight reconstruction of the invention. Based on this evidence, Gentry argues that the court did not err in finding that the combination of Talley and Kanowsky would not have rendered the invention obvious or that there existed a long-felt need for the invention, which became a commercial success.

■ We agree with Gentry that Berkline has not overcome the statutory presumption of validity, *see* 35 U.S.C. § 282 (1994), by proving facts that clearly and convincingly show that the claimed invention would have been obvious at the time the invention was made. On appeal from a bench trial, we review the legal conclusion of non-obviousness *de novo*, and the factual inquiries underlying that conclusion for clear error. *See B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.*, 72 F.3d 1577, 1582, 37 USPQ2d 1314, 1317–18 (Fed.Cir.1996).

Contrary to Berkline's argument, the mere possibility that the Talley and Kanowsky references could have been combined is insufficient to demonstrate that the claimed invention would have been obvious because, as noted above, the invention of the patent requires a "fixed console" between the recliners, which neither Talley nor Kanowsky provided. Moreover, even if the claimed invention did only involve the physical insertion of Talley's free-standing recliner into Kanowsky's sectional sofa, such simplicity alone is not determinative of obviousness. *See In re Oetiker*, 977 F.2d 1443, 1447, 24 USPQ2d 1443, 1446 (Fed.Cir.1992) ("Simplicity is not inimical to patentability."). In spite of the apparently facile combination, Metts testified: "[W]e had problems when we tried it . . . because ours bumped against the side. It [abutting the sofa units] would open it [the Talley recliner] prematurely."

Later, he also admitted that he did not realize that this problem could have been solved by recessing the push-button slightly. Despite Berkline's protestations to the contrary, this "strong, credible testimony," *Gentry II*, 939 F.Supp. at 101, supports the finding that the Talley recliner was considered inappropriate for use in a sectional sofa by those skilled in the art. Accordingly, the court did not clearly err in finding that Talley would not have bridged the gap between Kanowsky and the claimed invention. Therefore, even leaving aside the district court's analyses of long felt need and commercial success, which can only further support nonobviousness, *see Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 739 & n. 13, 230 USPQ 641, 643 & n. 13 (Fed.Cir.1986) (stating that "the absence of objective evidence [of long felt need and commercial success] is a neutral factor"), we conclude that Berkline has not proven that the invention would have been obvious at the time it was made.

■ Berkline also argues that claims 1–8, 11, and 16–18 are invalid because they are directed to sectional sofas in which the location of the recliner controls is not limited to the console. According to Berkline, because the patent only describes sofas having controls on the console and an object of the invention is to provide a sectional sofa "with a console . . . that accommodates the controls for both the reclining seats," '244 patent, col. 1, ll. 35–37, the claimed sofas are not described within the meaning of § 112, ¶ 1. Berkline also relies on Sproule's testimony that "locating the controls on the console is definitely the way we solved it [the problem of building sectional sofa with parallel recliners] on the original group [of sofas]." Gentry responds that the disclosure represents only Sproule's preferred embodiment, in which the controls are on the console, and therefore supports claims directed to a sofa in which the controls may be located elsewhere. Gentry relies on *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1582 n. 7, 40 USPQ2d 1019, 1027 n. 7 (Fed.Cir.1996), and *In re Rasmussen*, 650 F.2d 1212, 1214, 211 USPQ 323, 326 (CCPA 1981), for the proposition that an

applicant need not describe more than one embodiment of a broad claim to adequately support that claim.

■ We agree with Berkline that the patent's disclosure does not support claims in which the location of the recliner controls is other than on the console. Whether a specification complies with the written description requirement of § 112, ¶ 1, is a question of fact, which we review for clear error on appeal from a bench trial. *See Vas–Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563, 19 USPQ2d 1111, 1116 (Fed.Cir.1991). To fulfill the written description requirement, the patent specification "must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed." *In re Gosteli,* 872 F.2d 1008, 1012, 10 USPQ2d 1614, 1618 (Fed.Cir.1989). An applicant complies with the written description requirement "by describing *the invention,* with all its claimed limitations." *Lockwood v. American Airlines, Inc.,* 107 F.3d 1565, 1572, 41 USPQ2d 1961, 1966 (1997).

It is a truism that a claim need not be limited to a preferred embodiment. However, in a given case, the scope of the right to exclude may be limited by a narrow disclosure. For example, as we · have recently held, a disclosure of a television set with a keypad, connected to a central computer with a video disk player did not support claims directed to "an individual terminal containing a video disk player." *See id.* (stating that claims directed to a "distinct invention from that disclosed in the specification" do not satisfy the written description requirement); *see also Regents of the Univ. of Cal. v. Eli Lilly & Co.,* 119 F.3d 1559, 1568, 43 USPQ2d 1398, 1405 (Fed.Cir.1997) (stating that the case law does "not compel the conclusion that a description of a species always constitutes a description of a genus of which it is a part").

In this case, the original disclosure clearly identifies the console as the only possible location for the controls. It provides for only the most minor variation in the location of the controls, noting that the control "may be mounted on top or side surfaces of the console rather than on the front wall ... without departing from this invention." '244 patent, col. 2, line 68 to col. 3, line 3. No similar variation beyond the console is even suggested. Additionally, the only discernible purpose for the console is to house the controls. As the disclosure states, identifying the only purpose relevant to the console, "[a]nother object of the present invention is to provide ... a console positioned between [the reclining seats] that accommodates the controls for both of the reclining seats." *Id.* at col. 1, ll. 33–37. Thus, locating the controls anywhere but on the console is outside the stated purpose of the invention. Moreover, consistent with this disclosure, Sproule's broadest original claim was directed to a sofa comprising, *inter alia,* "control means located upon the center console to enable each of the pair of reclining seats to move separately between the reclined and upright positions." Finally, although not dispositive, because one can add claims to a pending application directed to adequately described subject matter, Sproule admitted at trial that he did not consider placing the controls outside the console until he became aware that some of Gentry's competitors were so locating the recliner controls. Accordingly, when viewed in its entirety, the disclosure is limited to sofas in which the recliner control is located on the console.

Gentry's reliance on *Ethicon* is misplaced. It is true, as Gentry observes, that we noted that "an applicant ... is generally allowed claims, when the art permits, which cover more than the specific embodiment shown." *Ethicon,* 93 F.3d at 1582 n. 7, 40 USPQ2d at 1027 n. 7 (quoting *In re Vickers,* 141 F.2d 522, 525, 61 USPQ2d 122, 125 (CCPA 1944)). However, we were also careful to point out in that opinion that the applicant "was free to draft claim[s] broadly (within the limits imposed by the prior art) to exclude the lockout's exact location as a limitation of the claimed invention" only because he "did not consider the precise location of the lockout to be an element of his invention." *Id.* Here, as indicated above, it is clear that Sproule considered the location of the recliner controls on the console to be an essential element of his invention. Accordingly, his original disclosure serves to limit the permissible breadth of his later-drafted claims.

Similarly, *In re Rasmussen* does not support Gentry's position. In that case, our predecessor court restated the uncontroversial proposition that "a claim may be broader than the specific embodiment disclosed in a specification." 650 F.2d at 1215, 211 USPQ at 326. However, the court also made clear that "[a]n applicant is entitled to claims as broad as the prior art *and his disclosure* will allow." *Id.* at 1214, 650 F.2d 1212, 211 USPQ at 326 (emphasis added). The claims at issue in *Rasmussen*, which were limited to the generic step of "adheringly applying" one layer to an adjacent layer, satisfied the written description requirement only because "one skilled in the art who read [the] specification would understand that it is unimportant how the layers are adhered, so long as they are adhered." Here, on the contrary, one skilled in the art would clearly understand that it was not only important, but essential to Sproule's invention, for the controls to be on the console.

In sum, the cases on which Gentry relies do not stand for the proposition that an applicant can broaden his claims to the extent that they are effectively bounded only by the prior art. Rather, they make clear that claims may be no broader than the supporting disclosure, and therefore that a narrow disclosure will limit claim breadth. Here, Sproule's disclosure unambiguously limited the location of the controls to the console. Accordingly, the district court clearly erred in finding that he was entitled to claims in which the recliner controls are not located on the console. We therefore reverse the judgment that claims 1–8, 11, and 16–18, were not shown to be invalid.

## C. *Attorney Fees*

Finally, Gentry argues that its success in overcoming Berkline's accusations of inequitable conduct entitles it to a partial award of attorney fees under 35 U.S.C. § 285 (1994) ("The court in exceptional cases may award reasonable attorney fees to the prevailing party."). Thus, Gentry asserts that the district court abused its discretion in refusing to consider an appropriate award of attorney fees. We do not agree.

The requirements for awarding attorney fees under section 285 are that "(1) the case must be exceptional, (2) the district court may exercise its discretion, (3) the fees must be reasonable, and (4) the fees may be awarded only to the prevailing party." *Machinery Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 470, 227 USPQ 368, 371 (Fed.Cir. 1985). Gentry's argument fails because it ignores the fourth criterion. Gentry is not "the prevailing party." When a plaintiff succeeds only in overcoming a defense raised to the claims it sought in bringing suit, the plaintiff is not "the prevailing party." Rather, to prevail within the meaning of section 285, Gentry must have achieved some of "the benefits ... sought in bringing suit," *i.e.*, damages or an injunction. *Hensley v. Eckerhart*, 461 U.S. 424, 433 & n. 7, 103 S.Ct. 1933, 1939 & n. 7, 76 L.Ed.2d 40 (1983) ("[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."); *see also Farrar v. Hobby*, 506 U.S. 103, 111–12, 113 S.Ct. 566, 572–73, 121 L.Ed.2d 494 (1992) ("In short, a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendants' behavior in a way that directly benefits the plaintiff."); *cf. Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183, 37 USPQ2d 1707, 1711 (Fed. Cir.1996) ("[A]s a matter of law, a party who has a competitor's patent declared invalid meets the definition of 'prevailing party.' "). Because Gentry was not "the prevailing party," we find no error in the district court's decision not to award attorney fees under section 285.

## CONCLUSION

The district court's judgment holding that Berkline does not infringe the '244 patent, that the patent claims are not invalid under § 103 as obvious, and that Gentry is not entitled to attorney fees is affirmed. However, because the district court clearly erred in finding that the disclosure of the '244 patent describes a sectional sofa in which the location of the recliner controls is not limited to the console, we reverse the decision that

claims 1–8, 11, and 16–18 were not shown to be invalid under § 112, ¶ 1.

### COSTS

No costs.

*AFFIRMED-IN-PART* and *REVERSED–IN–PART*.