**WINNER INTERNATIONAL ROYALTY CORPORATION, Plaintiff,**

v.

**Ching–Rong WANG, Defendant.**

**Civil Action No. 96–2107.**

United States District Court, District of Columbia.

June 12, 1998.

---

Charles Lewis Gholz, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, Kenneth A. Lapatine, New York City, Adam D. Cole, Tarrytown, NY, for Winner International Royalty Corporation.

Charles Randolph Wolfe, Richard E. Fichter, Charles Randolph Wolfe, Bacon & Thomas, Alexandria, VA, for Ching Rong Wang.

Charles Lewis Gholz, Oblon, Spivak, McClelland, Maier & Neustadt, Arlington, VA, for Winner International Royalty Corporation.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on review of the Patent and Trademark Office Board of Patent Appeals and Interferences decision on the patentability of Plaintiff's invention, an automobile anti-theft device commonly known as the "Super or Ultra Club." *Wang v. Wu,* Interference No. 102,654 (July 19, 1996). In 1991, an administrative law judge of the Patent and Trademark Office ruled that all of the claims (1 through 4) to Plaintiff's patent and claims 9–11 of the related patent application were invalid on their face in light of other patents and devices in existence at the time of the invention. On July 19, 1996, the Board of Patent Appeals issued a split opinion reversing in part and affirming in part that decision: with regard to very specific components mentioned in claims 1 and 3 of Plaintiff's patent, the Board reversed and found valid grounds for the issuance of a patent. Yet on the broader claims 2 and 4 of the patent and claims 9–11 of the related patent application, the Board affirmed the lower decision and found Plaintiff's device to be invalid and unpatentable.

On appeal to this Court, Plaintiff contends that the Board erred as to claims 2 and 4, and 9–11, while Defendant contends that the Board erred as to claims 1 and 3. In essence, Plaintiff asks this Court to affirm and re-

verse in part the Board's decision and to hold its device patentable in its entirety. The Defendant asks this Court to do exactly the opposite: affirm and reverse in part the Board's decision and to hold Plaintiff's device unpatentable and invalid in its entirety. This Court heard the matter without a jury from May 7, 1998 to May 13, 1998, May 27, 1998 and on June 1, 1998.

## BACKGROUND

Plaintiff, the Winner International Royalty Company ("Winner"), is a Delaware corporation with its principal place of business in Sharon, Pennsylvania. Winner is the distributer and patent holder of the original steering wheel anti-theft device known as the "Club", United States Patent No. 4,738,127 ("127 or Johnson Patent"). The Club has two telescoping rods with hooks at each end to attach to the steering wheel. It operates by having one of the rods extend well beyond its hook portion such that when in place, it prevents full rotation of the steering wheel. To lock in place, the Club employs a dead-bolt style locking mechanism, requiring a key to allow the telescoping rod to be moved in place.

In 1988, Jinn F. Wu, the Taiwanese manufacturer of the original Club, developed another steering wheel anti-theft device, now known as the "Ultra or Super Club." The Ultra Club operates in much the same way as the original Club, with two rods hooking at each end to mount on the steering wheel. In contrast to the Club's dead-bolt locking mechanism, however, the Ultra Club employs a ratcheting mechanism that allows for the telescoping rods to be extended and locked in place without the use of a key. While it is undisputed that the dead-bolt locking mechanism of the Club is more tamper-resistant, and thus more secure, than the spring loaded ratcheting mechanism of the Ultra Club, the self locking feature of the Ultra Club is more convenient and user-friendly to the consumer. Wu received a patent for this new device, United States Patent No. 4,935,047 (" '047 Patent"), which he in turn assigned to the Plaintiff Winner International. The '047 Patent is the patent at issue in this case.[1]

The Defendant, Ching–Rong Wang ("Wang"), is a Taiwanese national who resides in Taiwan, the Republic of China. Wang also received a patent, United States Patent No. 4, 887,443 (" '443 Patent"), for a steering wheel anti-theft device which looks and works very much like the Ultra Club. Wang owns a company in Taiwan which manufactures the device, known as the "Gorilla Grip," and he distributes it in the United States through its exclusive distributer, Amcor Industries.

In the fall of 1991, it came to the attention of the Patent and Trademark Office that there existed two competing patents on essentially the same device. An interference was declared, and Administrative Patent Judge John Martin conducted the proceeding to determine which of the two patents had priority over the other. At some point in the proceeding, Defendant Wang chose not to pursue his own patent, but instead moved to hold both his and Plaintiff Wu's competing patent invalid and facially unpatentable. Under 35 U.S.C. § 103, "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Given the other automobile anti-theft device patents in existence at the time that also disclosed use of a ratcheting lock, Wang asserted under 35 U.S.C. § 103 that each of the claims in Wu's '047 Patent was "obvious" in light of the prior art and thus unpatentable. In essence, Wang argued that the concept of a "Club" with a self-locking feature was unpatentable, and thus anyone in the public domain had the right to manufacture such a device without fear of patent infringement. In that way, Wang could protect the sale of the Gorilla Grip even if he lost his right to the '443 patent.

---

1. In addition to the '047 Patent, also at issue in this case is Wu's related patent application for the Super Club, Application 07/478,411 or the '411 Application. In essence, claims 9–11 of the '411 Patent Application are encompassed within claims 1–4 of Wu's '047 Patent such that a decision on the merits as to claims 1–4 adequately addresses 9–11 as well.

Judge Martin rejected the specific prior art references cited by Wang, but nonetheless found Wu's claims to be facially obvious in light of the other prior art references disclosed by both parties in their patent applications. In his opinion, Judge Martin found Wu's '047 patent to be obvious over the original Club patent (the Johnson '127) in view of United States Patent No. 3,462,982 (" '982 or Moore Patent"), Published Taiwan Patent of Addition Application No. 74,210,699 (" '699 or Wu Roc Patent"), and the Published French Patent Application No. 2,566,398 (" '398 or Grimaldi Patent").

The Moore Patent discloses a Y shaped steering wheel lock which uses a ratcheting mechanism requiring a key for removal, but not installation. The two legs of the Y have immovable hook-shaped clamps for engaging the steering wheel. The third leg, or base, of the Y has teeth along the edges of the leg and a movable clamp which rides on the teeth. The movable clamp works by using a spring-loaded ratcheting lock mechanism to permit the clamp to be moved into place on the steering wheel without use of a key. Patented in 1969, the Moore Patent was mentioned as prior art not only in the Wu '047 Patent application, but also in the original Johnson '127 Patent.

The Wu Roc Patent discloses a "versatile locking core" that can employ either a deadbolt lock or a ratcheting lock for use in the lock housing of a key operated automobile anti-theft device. The invention is described for the use and convenience of the manufacturer, who, with the patent blueprint, can manufacture either lock for an anti-theft device with minimal cost for change of parts. Since the patent is essentially for the dual locking feature, it fails to describe the rest of the anti-theft device, or indicate where the device would be placed in the car. The inventor of this patent is the same Wu listed on the '047 Patent now in contention. This "Wu Roc" Patent was issued a year after the Johnson Patent and two years prior to the Wu '047 Patent.

The Grimaldi Patent discloses a number of automobile anti-theft devices which lock the clutch or brake pedal against the floor board of the car. The devices disclosed in the patent use a ratcheting style mechanism to lock the devices in place. A circular rod is mounted to the floorboard and has a series of identical circumferential grooves, each of which has an annular, vertical, surface, and a sloping (i.e.frusto-concial) surface separated by a cylindrical outer surface. The arm of the clutch or brake pedal is held against the floorboard by a movable, key-operated locking frame, which includes a spring-biased locking pin for ratcheting engagement with the grooves on the rod. The spring loaded locking bolt in this patent is contained, for added security purposes, within a "blind bore," which is a bore formed with a single opening that opens into the passage that carries the locking rod, and is thus blocked by the rod when it is in place.

In sum, Judge Martin reasoned that one of ordinary skill in the art would have been able to combine the teachings of these other patents along with the Johnson '127 Patent to easily figure out a way to change the deadbolt mechanism of the Johnson Patent to a ratcheting lock. On this point, Judge Martin stated that "an artisan (a) would have been aware of the ratcheting-type steering wheel locks disclosed in Moore and Wu Roc, (b) would have considered Johnson's dead bolt-type locking device to be disadvantageous compared to the Moore and Wu Roc devices in that it requires a key for installation, and thus (c) would have been motivated to make Johnson easier to use, albeit less secure, by replacing his dead bolt mechanism with a suitable ratcheting mechanism." Bd. at 65.

With this set of assumptions in mind, Judge Martin found that it would have been facially obvious to an ordinary artisan to modify the Johnson Patent to produce the '047 device. The judge analyzed that one of ordinary skill in the art would have turned to the Moore Patent for information concerning the ratcheting lock. Judge Martin reasoned that once an artisan determined from the Moore Patent that a ratcheting lock would be more convenient than a dead-bolt, he would have looked to the structural teachings of "Wu Roc" and "Grimaldi" to design the actual ratchet to replace the dead-bolt design of the Johnson Patent. From Wu Roc, the judge found that an artisan would

have been able to devise the basic design and mechanics of a superior ratcheting lock capable of being used in an automobile anti-theft device. Yet given Wu Roc's claimed use in either a dead-bolt or ratchet lock design, the judge noted that an artisan would clearly know to adapt the patent for ratchet use only. What is more, one skilled in the art would further have looked to the Grimaldi Patent for information on specific rod shape and pawl design as an enhancement of the basic Wu Roc design. Judge Martin concluded that even though a number of modifications to the Wu Roc and Grimaldi ratchet lock designs were needed to reach the specifications of the '047 patent, the combined teachings of the prior art would have suggested those changes to one of ordinary skill in the art. For those reasons, he rejected all four of the claims asserted in the Wu '047 Patent and related claims 9–11 of the Wu '411 Patent Application on the grounds of obviousness.

 Upon finding a *prima facie* case of obviousness, Judge Martin noted that the legal analysis could not end there: secondary considerations such as commercial success had to be considered as rebuttal evidence to the initial finding of obviousness.[2] Yet upon considering the secondary factors such as commercial success, Judge Martin concluded that there was insufficient evidence to rebut the *prima facie* case of obviousness. Although no one disputed that Plaintiff's market share from the '047 Patent was enough to constitute a "commercial success", Judge Martin found that there lacked the necessary "nexus" between the sales of the Super Club and the claimed merits of the patent. In other words, he held that the Plaintiff failed to prove that Super Club sales were due to its self-locking feature rather than other factors such as extensive advertising, unclaimed features, and Plaintiff's dominant market position vis-a-vis the original Club. Accordingly, Judge Martin held Plaintiff's invention to be invalid in its entirety.

On appeal to the Patent and Trademark Office Board of Patent Appeals and Interferences, the three judge panel split in its opinion. Judge Martin, who had presided over the interference, affirmed his earlier decision in whole. Judge Sofocleous disagreed. He wrote that in his view, "it would not have been obvious to one of ordinary skill in the art to have modified the apparatus of Johnson by replacing its dead bolt locking mechanism with a ratchet-type locking mechanism as taught by Wu Roc." Bd. at 106. He found that "the Johnson patent teaches away from such modification in view of Johnson's express teachings that a ratchet-type locking mechanism is disadvantageous" and further concluded that "there would have been no incentive or motivation for one of ordinary skill in the art to modify the apparatus of Johnson as suggested by [Judge Martin], since none of the references teaches or suggests that the Johnson dead bolt locking mechanism is disadvantageous to use, thereby providing incentive or motivation to replace the dead bolt mechanism with another type of locking mechanism such as a ratchet-type locking mechanism." *Id.*

Splitting the difference between the two, and thereby becoming the majority opinion, Judge Pate concurred with Judge Martin as to nearly all of the elements of the '047 Patent. For the reasons given by Judge Martin in his opinion, judgment was entered by the Board against claims 2 and 4 of the Wu '047 Patent on the ground of unpatentability for obviousness in view of Johnson, Moore, Wu Roc, and Grimaldi. However, with regard to the blocking plug of the blind bore as specified in claims 1 and 3 of the Wu '047 Patent, Judge Pate held that one of ordinary skill would not have found it obvious "to extend the blocking plug a sufficient distance in the bore to act as a pin to pin the lock housing to the tube." *Id.* at 104. He wrote, "There is simply no teaching beyond the mere blocking of the bore that would have taught making the plug into a pin that serves an additional, and entirely separate, security function." *Id.* This is the decision

---

**2.** As the Federal Circuit held, "Secondary considerations such as commercial success may provide the most cogent and judicially useful evidence of non-obviousness as they are objective evidence concerning how the patented device is viewed in the marketplace by those directly interested in the product." *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed.Cir.1983).

from which both parties cross-appealed to this Court.

## ANALYSIS

Under 35 U.S.C. § 103, "[a] patent may not be obtained ... if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Factual findings, reviewed for clear error, constitute the foundation for the ultimate legal determination of obviousness. *See, e.g., In re Mayne*, 104 F.3d 1339, 1341 (Fed.Cir.1997). In determining obviousness, the following factual findings must be considered: (1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; and (3) the level of ordinary skill in the art. *See Graham v. John Deere Co.*, 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In sum, the determination under § 103 is whether the claimed invention as a whole would have been obvious to a person of ordinary skill in the art at the time the invention was made. *See, e.g., Medtronic, Inc., v. Cardiac Pacemakers, Inc.*, 721 F.2d 1563, 1567 (Fed.Cir.1983). A Section 103 determination involves mixed questions of law and fact. While the ultimate question of obviousness is one of law, and thus subject to de novo review, the underlying inquiries into the scope and content of the prior art, differences between the prior art and the claimed invention, and the level of ordinary skill in the art, are questions of fact, subject to review under the clearly erroneous standard. *See, e.g., Kahn v. General Motors Corp.*, 135 F.3d 1472, 1479 (Fed.Cir.1998). As the Supreme Court enunciated in *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948), "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

Upon carefully examining the prior art references and listening to the testimony presented at trial, including the expert testimony of those with ordinary skill in the art, this Court finds that the Board of Patent Appeals erred in rejecting claims 2 and 4 of the Wu '047 Patent, and the related claims 9–11 of the Wu '411 Patent Application, on the grounds of obviousness. The Board began with a set of assumptions that necessarily determined the outcome: (a) that an artisan would have been aware of the ratcheting-type steering wheel locks disclosed in the Moore and Wu Roc Patents, (b) the artisan would have considered Johnson's dead bolt-type locking device to be disadvantageous compared to the Moore and Wu Roc devices to the extent that Johnson requires a key for setting in position and adjusting the device, and thus (c) the artisan would have been motivated to make Johnson easier to use, albeit less secure, by replacing the dead bolt mechanism of the Johnson Patent with a suitable ratcheting mechanism. Bd. at 65.

While none of the parties dispute assumption (a), that one of ordinary skill in the art would have been aware of the Moore and Wu Roc patents, this Court finds that the other two assumptions were not supported by the prior art, and thus clearly erroneous. Upon reading the Johnson Patent, this Court finds no suggestion of a material disadvantage to using a dead-bolt lock rather than a ratcheting lock. The Johnson Patent would seem to negate the use of a ratcheting mechanism in an anti-theft device. In its reference to Moore, the one ratcheting device already in existence, Johnson mentions that the exposed teeth and racheting function of the Moore Patent are more prone to security breeches than the dead-bolt employed by the Johnson Patent. ("The locking mechanism[ ] of Moore ... [is] exposed, and include pry points there about in which a crowbar may be inserted in an attempt to overcome such mechanisms.") '127 Patent at 1.

The Wu Roc Patent also makes no suggestion of a comparative disadvantage to using a dead-bolt lock rather than a ratcheting one. While Judge Martin was right to note that Wu Roc seems to suggest that a manufacturer may also want to produce a ratcheting anti-theft device as well as a dead-bolt, the Wu Roc patent discloses no reason why, in

light of the success of Johnson '127, it would be advantageous to use a ratchet instead.

As for the Grimaldi Patent, which discloses an anti-theft device for the clutch rather than the steering wheel, there is clearly no suggestion whatsoever to combine its rod and pawl design with the Johnson Club. None of the prior art references relied upon by the Board of Patent Appeals provides any reason to motivate one skilled in the art to replace the dead-bolt lock of Johnson with a ratcheting device.

■ Defendant's expert, Mr. Walter E. Surko, Jr., testified that in the design of a commercially viable lock, the benefits of additional security must always be weighed against the need for relative convenience. In that sense, the combination of the Johnson Club with a self-locking feature is not an extraordinary invention; it is deceptively simple. However, simplicity alone cannot be determinative of obviousness. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1478 (Fed.Cir.1998); *see also In re Oetiker*, 977 F.2d 1443, 1447 (Fed.Cir.1992) ("Simplicity is not inimical to patentability."). The standard of obviousness is not whether in hindsight, it seems elementary that someone would have combined these certain elements in the prior art to form the invention in question. *See, e.g., W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 1551 (Fed.Cir.1983). Hindsight is almost always perfect. It is insufficient to prove that at the time of the claimed invention, the separate elements of the device were present in the known art. Rather, there must have been some explicit teaching or suggestion in the art to motivate one of even ordinary skill to combine such elements so as to create the same invention. *See Arkie Lures, Inc. v. Gene Larew Tackle, Inc.*, 119 F.3d 953, 957 (Fed.Cir.1997). In this case, nothing in the prior art suggests that the Johnson '127 device could be readily combined with the Moore, Wu Roc, and Grimaldi Patents so as to achieve Wu '047.

Without this assumption, Judge Martin's majority opinion must be rejected. As Judge Martin himself conceded, one of ordinary skill in the art would only turn to the Grimaldi and Wu Roc Patents after first learning from Moore the basic idea of replacing the dead-bolt lock with a ratchet lock. Clearly, if one could not glean from Moore the initial suggestion of a complex combination, Wu Roc and Grimaldi in and of themselves would certainly not provide much guidance as to how to construct the Wu '047 device. If one of ordinary skill in the art would not have thought to combine the Johnson Patent with some form of a ratchet mechanism, then the fact that Wu '047 may have borrowed some elements from Wu Roc and Grimaldi becomes irrelevant. Again, absent some teaching or suggestion in the prior art to combine the features of Wu Roc and Grimaldi with Johnson, the Board could not, under the law, find "obviousness" even if there existed in the prior art some separate individual elements of the claimed invention. *Id.*

■ In light of this Court's finding that the Wu '047 Patent is valid on its face, it need not reach the secondary issue of commercial success. Such factors need to be considered only if there has been a *prima facie* determination of obviousness, at which point the burden shifts to the plaintiff to show by objective evidence commercial success, copying, or a long felt need satisfied by the invention. *See Graham v. John Deere Co.*, 383 U.S. 1, 35–36, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Yet while not required to address this point, the Court finds that Plaintiff put in sufficient evidence to establish the commercial success of the '047 Patent. It was undisputed at trial that since 1988, Plaintiff has sold more than one and a half million units of the '047 Patent, worth more than 60 million dollars in sales. This Court finds that the economic data submitted by Plaintiff in this case adequately supports its position: the Super or Ultra Club is able to command a significantly higher retail price than the original Club to meet the peculiar needs of certain consumers. Although the consumer survey proffered by the Plaintiff was, to an extent, flawed because it was not as objective as it could have been, the Court nonetheless finds that the data has some value and was clearly consistent with the fact of commercial success. Accordingly, for all of the reasons set forth above, this Court finds that the Board erred in its rejection of claims

2 and 4 of the Wu '047 Patent and claims 9–11 of the Wu '411 Patent Application and reverses the Board's July 16, 1996 opinion as to those claims.