**Christopher KAROL and
Karol Designs, LLC**

v.

**THE BURTON CORPORATION**

No. 1:01–CV–178.

United States District Court,
D. Vermont.

Dec. 4, 2002.

John T. Sartore, Paul, Frank & Collins, P.C., Burlington, VT, Joseph E. Kovarik, Sheridan, Ross, P.C., Denver, CO, Amy L. Miletich, Mark E. Nolan, Langhoff & Miletich, LLC, Denver, CO, for plaintiffs.

R. Bradford Fawley, Downs Rachlin & Martin, Brattleboro, VT, Matthew B. Lowrie, James J. Foster, Michael N. Rader, Wolf, Greenfield & Sacks, P.C., Boston, MA, Andrew W. Loewi, Angela Wynn Victoria Jacobs, Brownstein, Hyatt & Farber, Denver, CO, for defendant.

### RULING ON CROSS–MOTIONS FOR PARTIAL SUMMARY JUDGMENT

MURTHA, District Judge.

Before the Court is another in a series of motions for partial summary judgment filed by Defendant, The Burton Corporation ("Burton"), this time for a ruling that claims in two patents held by Plaintiff, Christopher Karol ("Karol"), are invalid as misdescriptive. Karol has cross-moved for partial summary judgment that the patent claims are enforceable.

## I. BACKGROUND

Burton seeks a determination from this Court that claims in two of Karol's patents, U.S. Patent Nos. 6,113,127 (the " '127 Patent"), and 6,308,980 (the " '980" Patent), are invalid. In particular, Burton contends that the patents' specifications do not adequately support their claims. According to Burton, Karol's patent claims were drafted specifically to include Burton's designs, but in so doing the claims now fail to describe the binding that Karol actually invented.

Generally, Karol's patents describe a snowboard binding system, affixing a boot to the snowboard. The technology at issue in these patents is relatively easy to understand but must be described in some detail before the issues presented by this summary judgment motion can be resolved.

Relevant to this motion, the binding described in Karol's patents has latches or "engagement members" that slide into corresponding recesses in the snowboard boot, holding it into place. In Karol's preferred embodiment, two or more engagement members are biased toward their locked position by springs or other tensioners that force the binding closed. In order to secure the binding, a rider steps down into the binding, forcing the engagement members open and away from the boot. When the boot is in place, the springs push the engagement members back into their closed position, securing the boot to the binding. As Burton points out, the binding operates much like a door latch.

The controversy here arises from various of Karol's patent claims that describe, for example, a binding system "whereby vertical pressure by [the] boot towards [the] boot engaging plate when the snow-

boarder's boot is stepped vertically downward onto [the] binding system is sufficient to move [the] engaging members to [the] engaging position." ('127 Patent, Column 18, lines 23–28). Burton concedes Karol's claims accurately describe how its own binding functions, but contends that it no longer describes the operation of Karol's invention as set forth in the patent specification. In particular, Burton argues that under Karol's patent, stepping into the binding forces the engaging members outward to their *disengaged* position, instead of into their *engaged* position.

According to Burton, this is more than a semantic distinction. With Karol's "door latch" binding, pressure from the boot disengages the engagement members, and pressure from springs is required to re-engage the engagement members and secure the boot to the binding. This, Burton argues, is different from its binding design in which pressure from the boot directly engages the binding. Karol responds that Burton is attempting to construe Karol's patents as narrower in scope than they actually are. According to Karol, his patents describe a number of different mechanisms for engaging the binding, and Burton improperly focuses only on Karol's preferred embodiment.

Despite the parties' complicated arguments concerning the history of Karol's patents, the operation of a variety of snowboard binding designs and the technical language employed to describe them, this summary judgment motion turns on the relatively mundane question whether Karol's patent specification adequately sets forth a description of a snowboard binding in which the engagement members are *engaged* as opposed to *disengaged* by the force of the rider stepping into the binding.

## II. DISCUSSION

The history of the "engaging" versus "disengaging" language in Karol's patents was fully discussed in this Court's prior ruling dated February 8, 2002, familiarity with which is assumed. Unlike that prior ruling, which involved allegations of inequitable conduct before the patent officer, this case involves the more straightforward argument that certain of Karol's patent claims are invalid because they misdescribe the operation of Karol's invention. Burton bears a heavy burden to demonstrate invalidity. "Issued patents have a strong presumption of validity in infringement proceedings." *Al–Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323 (Fed.Cir. 1999).

■ In light of the patents' complicated prosecution history, the Court must first identify which version of the patents— particularly the '127 Patent—is presently in dispute. Following the issuance of the '127 Patent, Karol filed a certificate of correction with the Patent Office. Importantly, however, the Patent Office did not grant Karol's requested certificate until after Karol filed the present suit. Accordingly, the patent before the Court in the present dispute is the uncorrected version of the '127 Patent. *See Southwest Software, Inc. v. Harlequin, Inc.*, 226 F.3d 1280, 1294 (Fed.Cir.2000) ("[C]ertificate of correction is only effective for causes of action arising after it was issued"). Today's ruling pertains only to the uncorrected '127 Patent and the '980 Patent.

### A. *35 U.S.C. § 112*

The relevant law is easily stated but more difficult to apply on the facts of this case. 35 U.S.C. § 112 provides, in relevant part:

[¶ 1] The [patent] specification shall contain a written description of the invention, and of the manner and process

of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

[¶ 2] The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

Burton contends that Karol's patents fail under both paragraphs of Section 112: they are invalid as misdescriptive under Section 112 ¶ 1, and their claims fail to conform to the specifications as required by Section 112 ¶ 2. Burton's two contentions are not unrelated, however. Both arguments turn on the central question whether Karol's patent specifications described a binding system more broadly than the so-called door latch mechanism reflected in his preferred embodiment.

1. *Section 112 ¶ 1*

█ The first paragraph of Section 112 is said to provide a "written description" requirement. Whether or not a patent specification meets the written description requirement is a question of fact. *See Vas–Cath Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed.Cir.1991). Therefore, summary judgment is inappropriate unless there exists no genuine issue of material fact and Burton is entitled to judgment as a matter of law. *See Elan Pharm. Inc. v. Mayo Found. for Med. Educ. & Research*, 304 F.3d 1221, 1227 (Fed.Cir.2002).

█ "To fulfill the written description requirement, the patent specification must clearly allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed." *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed.Cir.1998) (internal quotation marks omitted). "What is claimed by the patent application must be the same as what is disclosed in the specification; otherwise the patent should not issue." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 1840, 152 L.Ed.2d 944 (2002).

As one court has described the written description requirement in Section 112 ¶ 1:

While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification. The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought.

*Lockwood v. American Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed.Cir.1997), quoted in *TurboCare Div. of Demag Delaval Turbomachinery Corp. v. General Elec. Co.*, 264 F.3d 1111, 1119 (Fed.Cir.2001). In other words, "[t]o satisfy the written description requirement, an inventor must show that he was in possession of the invention at the time the application was filed. One shows that one is 'in possession' of the invention by describing the invention, with all its claimed limitations, not that which makes it obvious." *Abbot Labs. v. Inverness Med. Tech.*, No. 98–10674–GAO, 2002 WL 1906533, at *1 (D.Mass. Aug.19, 2002) (internal quotation marks, emphasis, and citations omitted); *see also Vas–Cath Inc.*, 935 F.2d at 1563–64 ("The purpose of the 'written description' requirement is broader than to merely explain how to 'make and use'; the applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession of the invention.").

### 2. *Section 112 ¶ 2*

■ Section 112 ¶ 2 contains two requirements: "first, [the claim] must set forth what the applicant regards as his invention, and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently definite." *Solomon v. Kimberly–Clark Corp.,* 216 F.3d 1372, 1377 (Fed.Cir.2000) (internal quotation marks omitted). Burton does not allege that Karol's claims are insufficiently definite, but only that they do not accurately conform to the patent specification. In other words, Burton argues that Karol's claims do not set forth what Karol regards as his invention. "The determination whether a claim recites the subject matter which the applicant regards as his invention, like a determination whether a claim is sufficiently definite, is a legal conclusion that is drawn from the court's performance of its duty as the construer of patent claims." *Id.* (internal quotation marks omitted).

■ The Court is governed by several basic principles in construing Karol's claims. "In interpreting the claim limitations, the court should look first to the intrinsic evidence, or in other words the written description, the drawings, and the prosecution history, if in evidence." *Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1344 (Fed.Cir.2002). And, as in the Section 112 ¶ 1 analysis, "[w]here it would be apparent to one of skill in the art, based on the specification, that the invention set forth in a claim is not what the patentee regarded as his invention, we must hold that claim invalid under § 112, paragraph 2." *Id.* at 1349.

### B. *Karol's Patents*

### 1. *The '127 & '980 Patent Claims*

■ The '127 Patent claims a binding system with movable engagement mem-

bers "whereby vertical pressure by said boot towards said boot engaging plate when the snowboard's boot is stepped vertically downwardly onto said binding system is sufficient to move said engaging members to said engaging position." ('127 Patent, Column 18, lines 23–28). Similar language is repeated in two additional claims. *See* '127 Patent, Column 19, lines 37–41 ("whereby vertical pressure by said boot towards said base when the snowboarder's boot is stepped vertically downwardly onto said binding is sufficient to move said engaging members to said engaging position"); '127 Patent, Column 20, lines 28–31 (same). The '980 Patent again contains the same or similar language in its claims. ('980 Patent, Column 18, lines 37–41; Column 20, lines 46–50; Column 23, lines 6–9).

These claims plainly describe a binding system, like Burton's, in which the downward force of the boot is sufficient, by itself, to move the binding's engagement members into their engaged position. This is different from Karol's preferred embodiment in which an additional force is required to engage the engagement members, for example the force from a spring.

### 2. *Karol's Preferred Embodiment*

In order to understand the potential breadth of Karol's invention, it is useful to start with its more limited preferred embodiment. In the preferred embodiment, downward pressure from the rider's boot forces the engagement members into their disengaged position, while springs (or some other tensioners) force the engagement members back into their engaged position once the boot is in place. In his summary of the '127 Patent, Karol describes his invention as follows:

The present invention provides a system whereby vertical pressure by a snow-

boarder's boot toward the surface of the snowboard moves an engaging member from a first extended position to a second retracted position, and finally back to the first extended position, thereby securing the boot to the boot binding. ('127 Patent, Column 2, lines 54–59).

The '980 Patent contains the same language in its summary of the invention. ('980 Patent, Column 2, lines 62–65).

In his detailed description of the preferred embodiment of his binding design, Karol reinforces this door-latch mechanism. For example, he writes:

> The engaging member is secured within the housing so as to reversibly move between a first and a second horizontal positions [sic], wherein in said first position the engaging member is extended outward from the housing and said second position the engaging member is retracted into the housing.... The engaging member is placed under tension, for example, by one or more springs being biased against an opposing wall of the housing, urging said engaging member into said first position.... [N]ote that the tension urging the engaging member into the first position is preferably chosen so that the weight applied by a snowboarder is sufficient to move the engaging member from said first position to said second position by merely stepping into the binding system. ('127 Patent, Column 6, lines 24–55).

Here, again, identical language appears in the '980 Patent. ('980 Patent, Column 4, lines 43–67—Column 5, lines 1–5).

Burton is undoubtedly correct that the binding design described in Karol's preferred embodiment does not support the claims presently at issue. It is plain from the face of Karol's patent specifications that his design is primarily focused on a door-latch mechanism in which some force, separate and apart from the downward force of a rider's boot, pushes the engagement members into their engaged position. This design does not support a patent claim for a binding in which the downward force of a rider's boot is sufficient, in and of itself, to engage the engagement members.

Karol, however, argues that his patent specifications support broader claims than his preferred embodiment would support. Indeed, "an applicant is generally allowed claims, when the art permits, which cover more than the specific embodiment". *Gentry*, 134 F.3d at 1479 (quoting *Ethicon Endo–Surgery, Inc. v. United States Surgical Corp.*, 93 F.3d 1572, 1582 n. 7 (Fed. Cir.1996)). The question at the heart of the present summary judgment motion, then, is whether Karol's patent specifications can support the broader claims relating to a binding mechanism whose engagement members are engaged solely by the downward force of the rider's boot. If they cannot, then Karol's patent claims are deficient under Section 112.

### 3. *The '127 and '980 Patent Specifications*

Karol points to specific language in his patent specifications that he contends supports the claims as issued. First, Karol notes that the patent specification provides:

> It is also within the scope of the present invention to utilize different types of active engaging members with a retrofittable sole attachment and/or as an integral part of a snowboarder's boot sole so that a given snowboard boot may be used with a variety of active engaging members. For example, pivotable binding structures such as those described in [prior art] can be used instead of the horizontally engaging member described herein. ('127 Patent, Column 13, lines 26–40).

This passage, however, does not support Karol's patent claims because, taken in context, it describes Karol's boot design and not his binding design at all. Specifically, this passage specifies how Karol's boots may be modified to accommodate a number of different binding types, including those described in certain prior art.[1] By no means does this passage support that Karol invented what he now claims.

Karol next points to the passage in his patent specification that provides:

> Other suitable tensioning means can be utilized, such as elastic plastic, metal or rubber components that reversibly compress, extend or rotate when pressure is applied. ('127 Patent, Column 6, lines 36–39).

This, too, fails to support the patents' claims. The preceding sentence clarifies the limited scope of the quoted sentence: "The engaging member is placed under tension, for example, by one or more springs biased against an opposing wall of the housing, urging said engaging member into said first position." ('127 Patent, Column 6, lines 32–36). Read in light of the preceding sentence, the subject of the quoted sentence, "other tensioning means," reveals plainly that "components that . . . extend or rotate" describes different types of spring mechanisms. Karol cannot argue that this passage supports a binding design in which springs are not necessary to force the engagement members into their engaged position.

Likewise, another of Karol's specifications plainly has a different meaning than Karol now claims. The specification provides that "different configurations of static and active engaging mechanisms can be utilized. For example, an extended bar-like structure can be fitted on each side of a snowboarder's boot sole to pivotally engage with two opposing active sites secured to the snowboard." ('127 Patent, Column 12, lines 59–65). Here, the specification makes clear that the engagement members can be on the boot instead of the binding, but does not describe a binding that engages solely under the force of the boot's downward motion.

Finally, Karol's patent specification provides:

> It should be appreciated that the duo-sided active engaging binding described herein can utilize not only the horizontally engaging member arrangement described herein, but also other engaging-type mechanisms, such as those that rely upon a pivoting rotational engagement mechanism between a snowboarder's boot sole and binding. ('127 Patent, Column 10, line 67—Column 11, line 6).

The critical language in this passage, from Karol's point of view, is that other engagement mechanisms might include "those that rely upon a pivoting rotational engagement mechanism between a snowboarder's boot sole and binding." This language, however, is wholly insufficient to put someone of ordinary skill in the art of snowboard binding design on notice that Karol invented a binding in which the downward force of a boot alone engages the binding. No reasonable construction of the patent claims is supported by a binding with a "pivoting rotational engagement mechanism." This single phrase is incapable of bearing the weight Karol asks of it; it does not disclose what Karol claims in his patent.

Ultimately, Karol is unable to find support in his patents' specifications for a binding design that does not, at the least,

---

1. Burton argues that the prior art disclosed in this passage also refers to a door-latch style binding. Burton, however, provides no evidence in support of its contention. Accordingly, it is an improper basis for a ruling on summary judgment.

include some form of tensioner creating a bias towards an engaged position. In short, there is no genuine issue of material fact as to the meaning of Karol's patent specifications: they describe various forms of a door-latch mechanism. Likewise, Karol's patent claims are clear on their face. What is claimed by Karol's patents is not the same as what is disclosed in the patents' specifications.

## C. *Prosecution History*

This conclusion is supported by the somewhat tortured prosecution history for the '127 and '980 Patents. Without rehearsing the details of Karol's interaction with the Patent Office, as described more fully in this Court's order dated February 8, 2002, it is plain that the Patent Examiner repeatedly rejected Karol's claims containing language referring to the force from the boot moving the engagement members into an engaged position. In fact, the Examiner rejected such language on five separate occasions.

The language in question was reintroduced into the '127 Patent, as issued, in an amendment filed pursuant to 37 C.F.R. § 1.312. In that amendment, Karol physically underlined certain of the changes he sought to make to his claims, but did not point out to the Examiner the inclusion of the language that the Examiner had repeatedly rejected. An issued patent is entitled to a presumption of validity. *See Al–Site Corp.,* 174 F.3d at 1323. Nevertheless, the prosecution history of the '127 Patent casts doubt on that presumption, demonstrating a plausible alternative explanation for the issuance of the patent aside from the Examiner's belief in the claims' patentability.[2]

Karol urges the Court not to consider this aspect of the prosecution history, characterizing his correspondence with the Examiner as consisting of "informal suggestions." In a footnote, Karol suggests further that his correspondence with the Patent Examiner constitutes inadmissible hearsay. In this particular context, the Court is not looking to the Examiner's correspondence for the truth of the matter asserted therein—i.e., the Examiner's view of the patentability of Karol's claims. Nor does it make any difference to this analysis whether the correspondence consists of informal suggestions or final findings. Instead, the correspondence illuminates procedurally how the '127 Patent could have issued with claims the Examiner may have found objectionable. The point, simply, is that by today's finding of invalidity, the Court is not necessarily substituting its judgment for that of the Patent Examiner.

Interestingly, Karol himself sought to amend the patents after they issued to remove the particular language Burton now challenges. Whether including this language in his § 1.312 amendment was intentional or not, Karol evidently had a change of heart that is at least in tension with his position before the Court today. It is unnecessary, in light of the '127 and '980 Patents' failings under Section 112, to decide the preclusive effect this action may have had on Burton's arguments. But it is nevertheless noteworthy that Karol implicitly acknowledged he did not intend to reintroduce the challenged language into the patents, and indeed sought to have it struck after the patents issued.

## III. CONCLUSION

Having determined that certain of Karol's claims are not supported by his pat-

2. A similar account may be given of the '980 Patent. The Court will not belabor the point here except to note that the challenged language may also have been included in the '980 Patent through an unintentional oversight.

458

ents' specifications, Burton's motion for partial summary judgment is granted. While Burton does not separately list each of the challenged claims, the dispositive language appears in the '127 Patent in Claims 1, 9 and 17. The same or similar language appears in the '980 Patent in Claims 1, 34 and 67. All of the other claims in both of the patents expressly incorporate these invalid claims by reference and are therefore likewise invalid.

For the reasons stated herein, it is hereby ORDERED that Defendant's Motion for Partial Summary Judgment as to the claims in the '127 Patent and the '980 Patent is GRANTED. Plaintiff's cross-motion for partial summary judgment is DENIED. The request for oral argument is DENIED as moot.

SO ORDERED.